# Beso v. Eastern Building and Loan Association, Appellant.

*Building and loan association—Mortgage.*

On a bill in equity to cancel seventy-three promissory notes given for a loan to a New York building and loan association, and for a surrender of a mortgage on Pennsylvania real estate given to secure the notes, it appeared that plaintiff, a married woman, had paid a large number of the notes, which were returned to her, and having a right to anticipate payment of the remainder, had tendered their aggregate amount with interest, and that the tender had been refused. The association claimed that the mortgage covered not only plaintiff's obligation on the notes as a borrower, but also her duties and liabilities as a shareholder. The mortgage contained the following clause: " This grant was intended as a security for the payment of the sum . . . . the same being the principal, interest and premiums of a loan from said association, which said loan was made pursuant to and accepted under the provisions of the by-laws of said association, and which said by-laws have been read by the mortgagee, and are hereby made part of this contract; which said loan is evidenced and secured to be paid by seventy-three promissory notes of even date herewith." The by-laws contained numerous clauses relating to the duties and liabilities of borrowers, and also numerous clauses relating to the liabilities and duties of shareholders as such. *Held,* (1) that the mortgage was executed and delivered to the association solely as a security for the payment of the specific sum therein named, and to insure a compliance with the covenants relative to the payment of said sum; (2) and that the plaintiff was entitled to the relief for which she prayed.

Argued Nov. 4, 1901. Appeal, No. 58, Oct. T., 1901, by defendant, from decree of Superior Court, April T., 1900, No. 64, affirming decree of C. P. No. 2, Allegheny Co., April T., 1898, No. 533, on bill in equity in case of Josephine Beso and Anthony Beso v. The Eastern Building & Loan Association of

Syracuse, New York. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court, and by the report in 16 Pa. Superior Ct. 222.

*Error assigned* was decree of the Superior Court.

*Chester M. Elliott*, with him *R. E. Stewart*, for appellant.

*R. A. Balph*, with him *James Balph*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902:

The facts necessary to a determination of the issue were found by the trial judge and need not be repeated here.   The questions involved in the controversy have been discussed at length by the common pleas and Superior Court, and we agree with the conclusions reached by those courts.

The object of the bill filed in this case was to require the defendant association, the mortgagee, to satisfy the mortgage and to deliver to the plaintiffs for cancellation the bond and notes secured by it, on payment of a sufficient sum to cover the unpaid portion of the loan.   The plaintiffs allege that the mortgage was given to secure the payment of $2,834.55, evidenced by seventy-three promissory notes, at the dates of the maturity of said notes, together with such fines and penalties for nonpayment as might be imposed upon the plaintiff, Josephine Beso, pursuant to the provisions of the constitution and by-laws of the defendant association.   The contention of the defendant is that by the terms and conditions of the mortgage the plaintiffs were required not only to pay the sum named, with the fines and penalties, but also to perform their engagements as shareholders of the association by payment of the dues on twenty-five shares of stock of the association owned by Mrs. Beso.   It is conceded by the defendant that the plaintiffs have paid or tendered payment of the seventy-three promissory notes.   The only question, therefore, is whether the mortgage is merely a security for the payment of these notes, or also an obligation for the performance of Mrs. Beso's cove-

nants as a shareholder.  A construction of the contract between the parties as found in the mortgage and papers made by reference a part thereof, will afford a solution of the question.

Parts of the mortgage and the accompanying bond bear upon the question at issue.  In the mortgage it is stated: " This grant is intended as a security for the payment of the sum of $2,834.55, the same being the principal, interest and premium of a loan from said association, which said loan was made pursuant to and accepted under the provisions of the by-laws of said association, . . . . which said loan is evidenced and secured to be paid by seventy-three promissory notes of even date herewith executed by the said Josephine Beso and Anthony Beso, and payable monthly.  The bond is conditioned for the payment of $2,834.55 in seventy-three equal payments, the same being principal, interest, premium and dues on a loan from said association, . . . . which aforesaid sum is evidenced and secured to be paid also by seventy-three promissory notes of even date herewith."  The mortgagors covenant " to pay said principal, interest and premiums at maturity, and the interest accruing on said notes, after maturity, and all fines and penalties that may be imposed pursuant to the provisions of the constitution and by-laws of said association, and also keep and perform all promises and engagements made and entered into with said association, according to the true intent and meaning of its by-laws and articles of association."  Then follows a provision to keep the buildings insured for the benefit of the association and to pay taxes and other incumbrances.  If default was made in the payment of any one of the notes, or of the taxes, or by neglect to keep the premises insured or in good condition, " or in case of a breach of any of the covenants or agreements contained herein, or in case of failure to duly observe and keep the by-laws of the said association, and in either or any of such cases the whole of the said principal sum, interest, premiums, fines, dues and costs shall at once become due and payable."  If the covenants were not complied with and the premises were sold pursuant to the provisions of the mortgage, the defendant was authorized " out of all moneys arising from such sale, to retain the amount due and unpaid for principal, interest, premiums, fines, dues and costs thereof, taxes, assessments, impositions, insurance and

other advances, together with the costs and charges of making such sale, and the overplus, if any there is, shall be paid by the party making such sale on demand to the said Josephine Beso, her heirs and assigns." It is further provided that the conveyance was to be void if the moneys were paid and the plaintiffs' covenants were kept.

By reference to the by-laws it appears that certain duties and liabilities are therein imposed upon a borrower in reference to his loan. He is required to furnish a satisfactory note and first mortgage, together with a fire insurance policy, and to transfer his stock as security for the loan. The rate of interest and premiun and the time of payment are therein fixed. The borrower must furnish an abstract of title and a certificate that the premises are unincumbered. He may prepay his loan and have the mortgaged premises released, or may have the mortgage transferred from one piece of property to another, and he is required to pay the taxes on property given as security for a loan. The by-laws make the application for a loan a part of the shareholder's contract. The articles of association made similar provisions as to the security required, the transfer of the loan and prepayment of the mortgage. In the application it is stated that this loan is desired for six and one half years payable the last Saturday of each month.

The purpose of the mortgage in question is apparent from its own terms. It was intended "as a security for the payment of $2,834.55, the same being the principal, interest and premium of a loan by said association." Mrs. Beso's real estate was conveyed to the association to secure this loan, and any other construction given the terms of the conveyance would do violence to the language of the contract, as well as to the plain inference to be drawn from it. This view of the contractual relationship of the parties excludes any difficulty in the interpretation of the several papers constituting the agreement. The covenant that Mrs. Beso will perform her engagements according to the by-laws and articles of association refer simply to the loan, the payment of which is secured by the mortgage. The by-laws as we have seen, imposed certain duties upon the borrower, and the covenants in the mortgage requiring a compliance with the by-laws relate solely to these duties. This is the reasonable and natural construction to be given them. Had it

been the intention to make the mortgage a security for the payment of the stock dues, appropriate language would have been used. Such was the case of Everham v. Oriental Savings Loan Assn., 47 Pa. 352. The omission of such language taken in connection with the expressed intention of the parties giving the mortgage, is conclusive that the instrument was executed and delivered to the association solely as a security for the payment of the specific sum therein named, and to insure a compliance with the covenants relative to the payment of said sum.

The intention of the parties to the contract is further apparent from other parts of the mortgage. It is provided that on a " breach of any of the covenants or agreements contained therein, the whole of the said principal sum, interest, premium, fines, dues and costs shall at once become due and payable." Thereupon the property was to be sold and after payment of those sums any surplus was to be paid to Mrs. Beso. No provision is made for the payment out of the proceeds of sale of any balance due on the stock. The surplus, if any, was to be paid to. Mrs. Beso and is not to be applied to payment on account of stock dues. This is inconsistent with the position that the mortgage was given as a security for the performance of Mrs. Beso's duties as a shareholder. Equally convincing that such was not the intention of the parties is the defeasance clause. By it the conveyance was to be void if the loan was paid at the time specified and the covenants were kept by the plaintiffs. If the penalties, taxes and other incumbrances had been paid and the buildings kept insured and in good condition, the plaintiffs' covenants referred to in the condition would have been performed and the plaintiffs would have been in a position to demand that the mortgage should be satisfied.

We find nothing in the articles of incorporation or in the by-laws that would prevent the association from taking a mortgage to secure the payment of this loan and providing for its release on payment of the debt. That the association may do so is shown by the by-laws wherein it is provided that a shareholder may prepay his indebtedness and have his property released from the lien of the mortgage. This could not be done if as contended by the appellant, the mortgage necessarily secures the performance of the shareholder's engagements for the payment of dues on his stock.

A convincing and controlling reason that the parties understood the payments were to be applied to the loan is that on payment of the monthly instalments, the notes securing the payments were surrendered to the plaintiffs as they were severally paid. These notes were not given to secure the payment of the monthly dues on the stock, but as distinctly stated in the mortgage and accompanying bond, the " loan is evidenced and secured to be paid " by the notes. Sixty-two of the seventy-three notes securing the loan were paid and delivered to the plaintiffs as they severally became due. This was an acknowledgment by the association that the payments were made on the loan and not on the stock dues, and that they were received as such by the association.

The opinion of the trial judge and the very elaborate discussion of the question involved by the Superior Court make it unnecessary to say anything further in support of the decree entered in the court below. We are satisfied that the interpretation given the contract of the parties is in accord with their intention and clearly deducible from its language. Having paid the indebtedness secured by the mortgage the plaintiffs were entitled to have the bond and notes accompanying it delivered to them, and the mortgage satisfied and its lien discharged from the land.

It is unnecessary to discuss the power of the association to enter into certain stipulations in the contract set forth in the mortgage. The Superior Court has properly disposed of the question. If the contract is ultra vires the defendant association and it refuses to comply with and be bound by its covenants, the defendant cannot insist on its enforcement as a security against the land of the plaintiffs.

The assignments of error are overruled and the decree of the Superior Court is affirmed.